J-S20035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: H.L.M., MOTHER | : | No. 1924 MDA 2017 |

Appeal from the Decree November 14, 2017
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s):  0730 of 2017

BEFORE:  GANTMAN, P.J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MAY 08, 2018**

Appellant, H.L.M., ("Mother"), appeals from the decree entered in the

Court of Common Pleas of Lancaster County Orphans' Court Division, which

granted the petition of the Lancaster County Children and Youth Social Service

Agency ("Agency"), to terminate Mother's parental rights to her minor child

R.M.M. ("Child").  We affirm.

In its opinion, the Orphans' Court fully and correctly set forth the

relevant facts and procedural history of this case.  Therefore, we have no

reason to restate them.

Mother raises the following issues for our review:

> DID THE COURT ERR AND ABUSE ITS DISCRETION IN
> TERMINATING THE PARENTAL RIGHTS OF…MOTHER BY
> REFUSING TO CONSIDER AND ACCOUNT FOR THE
> OBSTACLES ENCOUNTERED BY MOTHER IN THE JUVENILE
> DEPENDENCY CASE AND IN MAINTAINING CONTACT
> WITH…CHILD, INCLUDING CHRONIC TRANSPORTATION
> ISSUES CAUSED BY HER UNRELIABLE VEHICLE, DELAYS IN
> THE REFERRAL, SCHEDULING, AND COMPLETION OF THE
> BIOPSYCHOSOCIAL EVALUATION, AND COMMUNICATION
> ISSUES WITH A PRIOR CASEWORKER?

DID THE COURT ERR AND ABUSE ITS DISCRETION IN TERMINATING THE RIGHTS OF…MOTHER, AS TERMINATION OF MOTHER'S RIGHTS IS NOT IN THE BEST INTERESTS OF…CHILD AND WILL NOT PROMOTE THE PHYSICAL, MENTAL, OR EMOTIONAL WELL BEING OF…CHILD, AS THE INTERACTION BETWEEN MOTHER AND…CHILD DURING VISITS DEMONSTRATED THAT A BOND EXISTS BETWEEN…MOTHER AND…CHILD?

(Mother's Brief at 8).

Appellate review of termination of parental rights cases implicates the following principles:

In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

- 2 -

> ***In re Adoption of A.C.H.***, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. ***In re J.D.W.M.***, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. ***In re R.L.T.M.***, 860 A.2d 190, 191-92 (Pa.Super. 2004).

***In re Z.P., supra*** at 1115-16 (quoting ***In re Adoption of K.J.***, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

The Agency filed a petition for the involuntary termination of Mother's parental rights to Children on the following grounds:

> **§ 2511. Grounds for involuntary termination**
>
> **(a)  General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>>
>> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be

remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b). "Parental rights

may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions."

*In re Z.P., supra* at 1117.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of … her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

> To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
> > Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for … her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of … her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.,* (797 A.2d. 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence;

and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P., supra* at 1118. "[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Section 2511(a)(8) sets a 12–month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12–month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the Agency supplied over a realistic time. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of

Agency services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa.Super. 2003); *In re Adoption of M.E.P., supra*.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have … her rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental

- 8 -

duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of … her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of … her child is converted, upon the failure to fulfill … her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Leslie Gorbey,

we conclude Mother's issues merit no relief. The Orphans' Court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Orphans' Court Opinion, dated December 29, 2017, at 1-14) (finding: **(1)** as of December 2017, Child has been in placement for over 12 months; Mother agreed Child is better off in kinship care until Mother is able to fix her home and maintain financial stability; Mother has not addressed these goals in over one year; forcing Child to remain in uncertainty of placement pending Mother's change will be harmful to Child; Mother's efforts toward reunification have been minimal; in more than one year, Mother failed to complete mental health treatment, maintain sobriety, begin or complete parenting training, and secure stable housing; record shows Mother missed only one or two visits with Child due to transportation; majority of missed visits and meetings related to failed drug screens and no-shows; concerning timing of biopsychosocial evaluation referral, Mother was unable to attend initial evaluation because of work conflicts; Mother lost employment but failed to inform Agency, which further delayed evaluation; Mother was again referred for evaluation in September, but she did not communicate to Agency until late October that she could not reach therapist; concerning her "communication issues" with Agency, Mother testified about difficulties she had with caseworker at Agency contractor, Family Alternatives; Agency respected Mother's request not to work with Family Alternatives again; contrary to Mother's assertions, court did consider Mother's transportation situation but found it was not significant

- 10 -

hurdle for Mother, and evaluation referral delay was properly attributed to Mother's own unavailability and her failure to communicate with Agency; Agency accommodated Mother's concern about her conflict with caseworker at contractor services provider; **(2)** record demonstrates Mother has loving relationship with Child, but her bond with Child is insufficient to halt termination of parental rights; Child has strong bond with kinship parents; Child's care and comfort with kinship parents is reliable for long term). Accordingly, we affirm on the basis of the Orphans' Court opinion.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/2018

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:   R.M.M.                                      :   Docket No: 730 OF 2017

                                                     :   SUPERIOR CT NO: 1924 MDA 2017

BY GORBEY, J.

## OPINION SUR APPEAL

### Procedural History

This matter came before this Court on the Petition filed on March 29, 2017 by the

Lancaster County Children and Youth Social Service Agency ("Agency") to terminate

the parental rights of the birth mother H.L.M. ("Mother") of R.M.M. ("R"), born October

2014. *OC-docket 11/13/2017 N.T. at 8.*

This family's contact with the Court in dependency began with the Agency's filing

for legal custody of R, granted by the Court on August 17, 2015, while Mother retained

physical custody and completed a rehabilitation program at Vantage House.[1] *OC-*

*docket 11/13/2017 N.T. at 9, 41.* Subsequently, the Agency filed a Petition for physical

custody of R, granted by the Court on August 10, 2016. *OC-docket 11/13/2017 N.T. at*

*8 and 11/13/2017 Ex. 2.* The Agency then filed a March 29, 2017 Petition to terminate

the parental rights of Mother.[2] *OC-docket 11/13/2017 N.T. at 9-10.* Hearings were

---

[1] This case is docketed to CP-36-DP-157-2015 and was incorporated into the instant Orphans' Court matter by Order dated April 24, 2017. For clarity's sake, we refer to either the OC-docket or the DP-docket, and the date and title of the document cited.

[2] R's father, J.W. ("Father"),did not attend any proceedings or contact the Agency, despite Notice, until his appearance at the November 13, 2017 termination hearing. *Both dockets, generally.* The Court bifurcated the November 13 matter and continued Father's hearing until a later date to allow him time to consult with counsel. *Both dockets 11/14/2017 Orders, OC-docket 11/13/2017 N.T. at 5-6, 7.* In her appeal, Mother points to this bifurcation as an error by the Court; Mother, however, had full notice of her hearing, pending since March 29, and no objection or assertion of prejudice was raised at the November

1

held on April 24 and November 13, 2017; on November 14, 2017, Decree was issued to terminate the parental rights of Mother to R. *OC-docket 11/13/2017 N.T. at 10.* On December 14, 2017, Mother filed the instant appeal.

## Factual History

Mother has one child, R, and the Agency became involved when R was born; R was admitted to the NICU for withdrawal symptoms related to suboxone and/or heroin exposure, along with concerns that Mother had no prenatal care for the first half of the pregnancy. *DP-docket 1/4/2015 Petition with Family Service Plan attached and 8/7/2015 Petition.* Mother was referred to three separate treatment providers for drug and/or alcohol issues, but failed to complete any course of treatment and, at times, appeared to be under the influence of substances and refused to be screened. *DP-docket 1/4/2015 Petition with Family Service Plan attached; DP-docket 8/7/2015 Petition.* In June of 2015, a Family Service Plan (FSP) was enacted, and Mother placed R with a family friend; Mother then disappeared for about five weeks. *DP-docket 1/4/2015 Petition with FSP attached and 8/7/2015 Petition.*

In August of 2015, Mother was located at Vantage House; because of her failure to cooperate or to seek treatment, because of concerns about her care for R, and due to statements that she would flee the jurisdiction, the Agency petitioned for and received legal custody of ten-month-old R on August 17, 2017. *DP-docket 1/4/2015 Petition with FSP attached and 8/7/2015 Petition.* Because Mother was in a six-month, residential treatment program that allowed children to live with their parents, the Agency

---

13 hearing. *OC-docket 11/13/2017 N.T. at 4-7.*

2

did not pursue physical custody at that time. *DP-docket 1/4/2015 Petition with FSP attached and 8/7/2015 Petition.*

By February of 2016, Mother had completed the program at Vantage House and relocated to a transitional living facility, Clare House. *DP-docket 5/19/2016 Order with FSP attached and 6/6/2016 Order.* By March 28, 2016, Mother was discharged unsuccessfully from Clare House because she tested positive for opiates. *DP-docket 5/19/2016 Order with FSP attached and 6/6/2016 Order.* Mother then failed to report her discharge, new address or new phone number to the Agency. *DP-docket 5/19/2016 Order with FSP attached and 6/6/2016 Order.* Mother and R were now living with Mother's mother and her husband, and R appeared to be safe and well. *DP-docket 5/19/2016 Order with FSP attached and 6/6/2016 Order.*

In August of 2016, the Agency petitioned for physical custody of R; two drug screens performed on Mother in July were invalid because the samples were adulterated with bleach. *DP-docket 8/10/2016 Petition and 8/15/2016 Ex.1 and 2.* Mother failed to appear or failed to produce a sample in response to the Agency's attempt to perform other screens and the Agency had concerns for her substance abuse and lack of treatment since March of 2016. *DP-docket 8/10/2016 Petition and 8/15/2016 Ex.1.* The Agency was unable to keep regular contact with Mother, and home and day-care visits were unsuccessful; further, Mother was not responding to mail. *DP-docket 8/10/2016 Petition and 8/15/2016 Ex.1.*

By Order dated August 15, 2016, the Court found R to be dependent and directed that the Agency take physical custody of R. *DP-docket 8/15/2016 Order.* At a

3

disposition hearing on August 29, 2016, a Child Permanency Plan (CPP) was approved with goals for Mother including mental health treatment, substance abuse treatment, remaining crime-free, parenting skills, financial stability, housing safety and stability, and maintaining a commitment to R. *DP-docket 8/29/2016 Order and Ex. 1.* A September 8, 2016 Order modified R's placement and confirmed that she was safely placed with her kinship resources, namely her maternal grandfather and his wife, with the approval of all participants. *DP-docket 9/8/2016 Order; OC-docket 11/13/2017 N.T. at 29.*

A permanency hearing in November of 2016 indicated that Mother's compliance and progress were minimal; Mother had only visited once since the August placement. *DP-docket 11/18/2016 Order.* At a subsequent permanency review hearing in January of 2017, Mother compliance and progress were reduced to NONE; Mother had no further visits with R, had not completed any evaluations, and had no contact with the Agency. *DP-docket 1/6/2017 Petition and 1/25/2017 Order; OC-docket 11/13/2017 N.T. at 10, 41.* Her employment and housing statuses were unknown. *DP-docket 1/6/2017 Petition and 1/25/2017 Order.* Mother's location, from December 2016 through late April 2017 was unknown. *DP-docket 6/9/2017 Petition; OC-docket 11/13/2017 N.T. at 10, 41-42, 58.* In Mother's own words, she "just walked away and gave up for a little bit." *OC-docket 11/13/2017 N.T. at 58.*

On March 29, 2017, the Agency filed a Petition to Terminate Mother's Parental Rights under section 2511 (a)(1), (2), and (5) of Title 23, Pennsylvania Consolidated

4

Statutes. At this time, Mother had not completed her CPP goals. *OC-docket 11/13/2017 N.T. at 9-10.*

By the June 2017 permanency review hearing, Mother had reappeared and reestablished contact with the Agency; her compliance and progress were deemed minimal. *DP-docket 6/9/2017 Petition and 6/26/2017 Order.* Mother had a mental health evaluation in May of 2017 and was then referred for a bio-psycho-social evaluation. *DP-docket 6/9/2017 Petition; OC-docket 11/13/2017 N.T. at 10, 35.* Mother was successfully discharged for a detox program in late April of 2017 and was referred for outpatient counseling; Mother had been screened prior to visits with R throughout May and was valid and negative at each screen. *DP-docket 6/9/2017 Petition and 6/26/2017 Order; OC-docket 11/13/2017 N.T. at 17.* R was initially shy with Mother, but had grown more comfortable with her as the visits continued. *DP-docket 6/9/2017 Petition; OC-docket 11/13/2017 N.T. at 26-27.* Mother had not yet been referred for parenting classes. *DP-docket 6/26/2017 Order; OC-docket 11/13/2017 N.T. at 21-22.* Mother reported employment and housing, but had not provided documentation or access to the Agency. *DP-docket 6/9/2017 Petition and 6/26/2017 Order.*

At this time, R had been in placement for 10 months. *DP-docket 6/26/2017 Order.* Hearings on the March Termination Petition had been scheduled for April and continued to June, but the hearing was then continued generally on June 26, because of Mother's continuing compliance with the CPP. *OC-docket 6/26/2017 Order and 11/13/2017 N.T. at 10.* By September, however, the Agency re-submitted a request for a hearing on its March 29, 2017 Petition to Terminate Mother's Parental Rights. *OC-*

*docket 9/21/2017 Order.* That hearing was scheduled to coordinate with a November permanency review hearing. *OC-docket 9/21/2017 Order.*

On November 13, 2017 the Court heard the full termination hearing as well as a permanency review hearing; R had been in placement for the last 15 months. *OC-docket 11/13/2017 N.T. at 3.* Mother's compliance was moderate and her progress minimal; since the Agency's involvement, Mother had completed none of her goals on the CPP. *DP-docket 11/13/2017 Order; OC-docket 11/13/2017 N.T. at 10.* Regarding her mental health goal, Mother had been referred for a bio-psycho-social evaluation on May 22, but she had scheduling problems through June and July, and the evaluation did not occur until August 29, 2017. *DP-docket 10/23/2017 Petition and 11/13/2017 Order; OC-docket 11/13/2017 N.T. at 11-12, 42, 44-45, 43-44.* That evaluation recommended dual-diagnosis counseling; Mother was referred to Gearty & Skiles Counseling on September 11, but did not tell the Agency until October 25 that she was unable to schedule an intake appointment, and that office could not confirm Mother's participation . *DP-docket 10/23/2017 Petition and 11/13/2017 Order; OC-docket 11/13/2017 N.T. at 12-13, 13-14, 35-36, 35-37.*

Regarding her substance abuse goal, Mother tested positive for amphetamines and methamphetamine on June 28, 2017 and then missed eight screens from July through September. *DP-docket 10/23/2017 Petition; OC-docket 11/13/2017 N.T. at 15, 17.* On three other screening dates, Mother was unable to provide either a urine or saliva sample for testing, and on two other screening dates, the Agency visited Mother's home but was told that she was not there. *DP-docket 10/23/2017 Petition; OC-docket*

6

*11/13/2017 N.T. at 15, 17-18.* A screen on August 29 was positive for opiates, methamphetamine and amphetamines; a screen on September 6, 2017 was positive for methamphetamine and amphetamines. *DP-docket 10/23/2017 Petition and 11/13/2017 Order; OC-docket 11/13/2017 N.T. at 15, 17, 19.* At the November 13 hearing, Mother was not in any sort of treatment, and had only been sober since August 28. *OC-docket 11/13/2017 N.T. at 60, 63.*

Regarding her goals of stable employment and housing, the Agency confirmed that Mother was employed for approximately one month, between June and July, 2017; Mother has provided no documentation of any other income or of suitable housing. *DP-docket 10/23/2017 Petition and 11/13/2017 Order; OC-docket 11/13/2017 N.T. at 23-26, 39.* At the November 13, 2017 hearing, Mother testified that, two weeks earlier, she moved into a home in Pequea, Pa, and was fixing up the home in lieu of paying rent; she was not certain if the home was safe for habitation. *OC-docket 11/13/2017 N.T. at 46-47.* Mother indicated that she was working for her mother for $8 per hour, as needed, and that she receives food stamps. *OC-docket 11/13/2017 N.T. at 47-48.* Mother continued to visit R, although many visits were cancelled because of Mother's positive drug screens. *DP-docket 10/23/2017 Petition and 11/13/2017 Order; OC-docket 11/13/2017 N.T. at 26.* A visit on August 5 was cancelled by Mother due to car trouble. *DP-docket 10/23/2017 Petition; OC-docket 11/13/2017 N.T. at 26.* Mother testified that two visits were missed because of vehicle issues. *OC-docket 11/13/2017 N.T. at 53-54.*

7

R has been with her maternal grandfather and his wife since September of 2016, when she was almost two years old. *OC-docket 11/13/2017 N.T. at 29.* She is comfortable in this home and has a strong relationship with these grandparents. *OC-docket 11/13/2017 N.T. at 29-30.* Further, these grandparents are willing to allow Mother visits with R, and have demonstrated an ability to be effective supervisors of R when Mother is present. *OC-docket 11/13/2017 N.T. at 31-33.*

On November 14, 2017, the Court issued a Decree terminating Mother's Parental Rights under section 2511 (a)(1), (2),(5) and (8) of Title 23, Pennsylvania Consolidated Statutes. *OC-docket 11/14/2017 Decree.* The Court found clear and convincing evidence of Mother's failure to perform parental duties for more than twelve months, that Mother's continued incapacity caused R to be without essential parental care, that Mother cannot remedy the causes within a reasonable period of time, and that termination of Mother's rights would best serve R.

## ISSUE

Whether a termination of parental rights is appropriate when the child has been in placement for 15 months during which time Mother has not completed any part of her child permanency plan, and where testimony indicates that the best interests of the child will be served by terminating Mother's rights?

## ANALYSIS

Parental rights may be terminated by statute; the pertinent statute, 23 Pa. C.S. §2511(a), provides for termination of those rights when:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a

8

settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
...
(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
...
(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

"In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re Adoption of M.R.B.*, 25 A.3d 1247, 1251 (Pa. Super. 2011). "The standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *M.R.B.*, supra, at 1251.

When the Agency has met its burden under Section 2511(a), the Court must also look to the requirements of Section 2511(b) before terminating any parental rights. "The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a

parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. §2511(b). Section 2511(b) centers judicial inquiry upon the welfare of the child rather than the fault of the parent. *In re A.R.*, 837 A.2d 560 (Pa. Super. 2003). "Considering what situation would best serve the child's needs and welfare, the court must examine the status of the bond between the natural parent and the child to consider whether terminating the parent's rights would destroy an existing, necessary and beneficial relationship." *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa. Super. 2003).

On appeal, Mother asserts that the Court's Order is not supported by evidence, and not in the best interests of R. A review of the record, however, indicates otherwise.

## TIMING

The language of 23 Pa.C.S. §2511(a), sections 1, 5 and 8 requires the Court to examine the facts in the context of time, specifically: the six-month period before the filing of the Petition to Terminate Parental Rights (a)(1); the child's legal status over six months (a)(5); and the child's status over 12-months after placement (a)(8).[3] At the

---

[3]Upon review of this matter, the Court noted that the March 2017 Petition to Terminate Parental Rights focused on sections 1, 2 and 5 of §2511, but the November Decree indicated grounds for termination laying under sections 1, 2, 5 and 8. The discrepancy is explained by the timing; by September, 2017, when the Agency requested the hearing, R had been in placement for over 12 months, making section 8 a viable basis for termination of rights. No objection was made at the November 2017 hearing, this issue is not raised on appeal, and the credited facts of record support a termination under section 8.

10

time of this writing, R has been in placement for 16 months, including seven months between the August, 2016 dependency determination and the March, 2017 Petition to Terminate Parental Rights and in all twelve-months after that dependency determination. Mother agreed that R was better off in her kinship placement "[u]ntil I am – until I have this house fixed and financially stable." *OC-docket 11/13/2017 N.T. at 63.* Mother has already had at least a year to address the shortcomings, but still has none of these goals accomplished; this Court is concerned that forcing R to remain in the uncertainty of placement while continuing to wait for Mother to change, will be harmful to her. The requirements of 23 Pa.C.S. §2511(a), sections 1, 5 and 8, have been met.

## PARENTAL EFFORTS

The language of 23 Pa.C.S. §2511(a), sections 1, 2, 5 and 8 requires the Court to examine Mother's conduct, specifically; Mother's refusal or failure to perform parental duties (a)(1); Mother's incapacity, abuse, neglect or refusal to care for her children and whether the underlying causes can or will be remedied (a)(2); the causes of the children's placement and whether Mother can remedy the causes with the assistance of services (a)(5); and the causes of placement and whether the causes continue (a)(8). "The focus of the termination proceeding is on the conduct of the parent and whether his conduct justifies termination of parental rights." *In re B.,N.M.,* 856 A.2d 847, 854–55 (Pa. Super. 2004).

As this Court has said before, Mother's efforts have been minimal. In over a year, Mother has not been successfully discharged from mental health treatment or

11

maintained her sobriety, she has not begun OR completed parenting training, and she has never secured stable income or suitable housing. Arguably, the only goal that Mother has continued with is regularly asking caseworkers about R.

Parental duty is "best understood in relation to needs of a child. A child needs love, protection, guidance and support. These needs, physical and emotional, cannot be met by a merely passive interest in development of the child. ... [T]he parental obligation is a positive duty which requires affirmative performance.". *In re C.S.*, 761 A.2d 1197 (Pa. Super. 2000). *In re G.P-R*, 851 A.2d 967 (Pa. Super. 2004). "Where the child is in foster care, this affirmative duty requires the parent to work towards the return of the child by cooperating with the Agency to obtain the rehabilitative services necessary for him to be capable of performing his parental duties and responsibilities." *In re G.P.R.*, 851 A.2d 967, 977 (Pa. Super. 2004), *summarizing In re: William L.*, 383 A.2d 1228, 1233-34 (Pa. 1978).

In her Statement of Errors Complained of on Appeal, Mother suggests that the Court did not consider the hurdles in her path, namely unreliable transportation, a delay in the bio-psycho-social referral, and communication issues with a prior Agency caseworker. Regarding transportation problems, Mother's testimony indicated two visits missed, and the Agency had only one visit missed, due to transportation; the large majority of Mother's visits were missed because of three positive drug screens, eight no-shows by Mother, three screens where Mother provided no sample for testing, and two no-shows by Mother for drug screens. Regarding the timing of the bio-psycho-social evaluation referral, that referral was provided on May 22; Mother worked for a few weeks from June to July 21, and was unavailable for the evaluation because of

12

work conflicts. Mother lost employment on July 21, but did not inform the Agency of that fact, further delaying the evaluation. The evaluation was finally performed on August 29. A referral consistent with that evaluation was made for Mother on September 11; Mother waited until October 25 to inform the Agency that she had difficulty reaching the therapist. Regarding communication issues with the Agency, it is unclear to what Mother refers; Mother testified about difficulties with a caseworker at Family Alternatives, a contractor with the Agency, but the Agency respected Mother's request not to work with Family Alternatives again. *OC-docket 11/13/2017 N.T. at 61.* Contrary to assertions, the Court did consider Mother's transportation situation but it was clearly not a significant hurdle for Mother, and the evaluation referral delay was properly attributed to Mother's own unavailability and failure to communicate with the Agency, and the Agency accommodated Mother's concern about conflicts with a caseworker at a contracted service provider.

Here, Mother's continued inability to care for R or to complete her permanency plan for reunification supports the termination decision in the Orphans' Court. This Court cannot gamble with the safety and welfare of this child. Mother has had ample opportunities to demonstrate her ability to be an acceptable parent but has failed to do so. The requirements of 23 Pa.C.S. §2511(a), sections 1, 2, 5 and 8, have been met.

## BEST INTERESTS OF THE CHILD

The language of 23 Pa.C.S. §2511(a), sections 5 and 8 requires the Court to examine whether termination of Mother's rights would best serve the needs and welfare of R.

13

Credited testimony indicates that, while Mother has a loving relationship with R, Mother's bond is not sufficient to halt the termination of her parental rights. R has a strong bond with her kinship parents, looking to them for comfort and care; for the long term, R's welfare depends on this comfort and care to continue and to be reliable. This child deserves the certainty of remaining with family that she loves and is bonded to, and does not deserve a mother who is unwilling to care for her in a healthy and appropriate manner; the requirements of 23 Pa.C.S. §2511(a), sections 5 and 8, have been met.

By clear and convincing evidence, the Agency has met its burden to terminate Mother's parental rights under Sections 2511(a)(1), (a)(2), (a)(5) and (a)(8).

## CONCLUSION

For the reasons stated above, the Court concludes that it is appropriate to terminate Mother's parental rights to R. The Clerk of the Orphans' Court is directed to transmit the record, *with incorporated dockets*, to the Superior Court.

BY THE COURT:

LESLIE GORBEY, JUDGE

DATED:   December 29, 2017

Attest:

Copies to:
Courtney J. Restemayer, Esquire
John P. Stengel, Esquire
Pamela J.K. Breneman, Esquire
Albert J. Meier, Esquire

14